IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,
Plaintiff,

v.

BOBBY J. TOLBERT,
Defendant.

Case No. 18–CR–40065–JPG

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Bobby J. Tolbert's Motion for Compassionate Release, (ECF No. 46), and Motion for Status, (ECF No. 47). For the reasons below, the Court **DENIES** Tolbert's Motion for Compassionate Release and **FINDS AS MOOT** his Motion for Status.

### I.   PROCEDURAL & FACTUAL HISTORY

#### A.   The Conviction

In 2018, a federal grand jury in this District indicted Tolbert for (1) conspiring to distribute methamphetamine and (2) actually distributing methamphetamine. (Indictment 1–2, ECF No. 1). He pleaded guilty the next year, (Plea Agreement 1, 9, ECF No. 30); and the Court sentenced him to an 87-month term of imprisonment, (Judgment 2, ECF No. 40). He is currently incarcerated at Federal Correctional Center ("FCC") Forrest City Low in Arkansas. (Def.'s Mot. for Compassionate Release at 1).

#### B.   The Presentence Investigation Report

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about the nature and circumstances of the offense and Tolbert's background. (*See* PSR 1, ECF No. 33).

According to the PSR, state law-enforcement officers learned from a confidential source that "Tolbert was involved in the distribution of methamphetamine in the form of ice." (*Id.* at 4). The source had been buying methamphetamine from Tolbert for about six months at the time. (*Id.*). The next year, a second confidential source "reported going to Tolbert's residence three times per week and smoking crystal methamphetamine." (*Id.* at 5). He also revealed that Tolbert would travel "to Louisville three times per week to purchase between $800 and $2,000 worth of crystal methamphetamine each time." (*Id.*). A third confidential source—who had purchased methamphetamine over 50 times—"also reported that Tolbert 'sent out' other individuals to commit burglaries when Tolbert heard of safes and other valuables that could be stolen. Tolbert had those individuals return with the stolen items in exchange for ice." (*Id.*). This was corroborated by a man who "admitted committing at least one dozen burglaries," breaking "into construction trailers, homes under construction, and abandoned homes to steal tools, copper, and jewelry," which were then traded to Tolbert "in return for methamphetamine." (*Id.*).

"[A]uthorities executed a search warrant at Tolbert's residence" in February 2018. (*Id.*). Inside they "recovered several generators, compressors, power washers, jewelry items, [] over 100 different hand and power tools[,] . . . drug paraphernalia, ammunition (89 rounds of .22 caliber bullets and 33 rounds of .25 ACP bullets), approximately 12 grams of ice, approximately 6 grams of marihuana, and various prescription pills (including hydrocodone, alprazolam, oxycodone, and diazepam)." (*Id.* at 4). A second search warrant executed in August revealed "prerecorded buy money[,] . . . a digital scale with methamphetamine residue, zip lock bags and baggie corners, a small quantity of cannabis, [] 29 live rounds of 7.63x39mm ammunition," and "a Night Owl digital DVR with four surveillance cameras." (*Id.* at 5–6).

Before being indicted in this Court, Tolbert pleaded guilty to five other offenses over 24 years. (*See id.* at 9–10). This includes a 2011 conviction for resisting a peace officer after he "damaged the front windshield and driver's side window of a vehicle" and a 2002 conviction for disorderly conduct after he spat on his wife, "threw tea on her, and pushed her out the front door." (*Id.*). He was also arrested at least nine other times on suspicion of having committed different crimes, including aggravated battery, theft, and unlawful transportation of a methamphetamine precursor. (*Id.* at 12–14).

### C. Tolbert's Motion for Compassionate Release

In September 2020, Tolbert moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Def.'s Mot. for Compassionate Release at 1). He contends that serious medical conditions—obesity, high blood pressure, and asthma—make him especially vulnerable to the COVID-19 virus. (*Id.* at 2).

The COVID-19 virus, of course, is now a global pandemic. At FCC Forrest City Low, 45 inmates currently have COVID-19; 637 (including Tolbert) have recovered; and none have died. *Coronavirus*, Bureau of Prisons (last visited Nov. 6, 2020).[1] In brief, Tolbert argues that his increased risk of experiencing serious complications if he contracts COVID-19 (again) is an *extraordinary and compelling reason* warranting his release. (Def.'s Mot. for Compassionate Release at 1).

## II.   LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants given the COVID-19 pandemic. Even so, each defendant moving for compassionate release bears the burden of showing <u>not only</u> that they face an increased risk from the virus, <u>but also</u> that their

---

[1] *Available at* https://www.bop.gov/coronavirus.

continued incarceration is unnecessary to advance the statutory purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Tolbert failed to meet that burden.

### A. Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The § 3553(a) factors include:

    (1)    The nature and circumstances of the offense and the history and characteristic of the defendant;

    (2)    The need for the sentence imposed—

        a.    To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        b.    To afford adequate deterrence to criminal conduct;

        c.    To protect the public from further crimes of the defendant; and

        d.    To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)    The kinds of sentences available;

    (4)    The kinds of sentence and the sentencing range established for—

        a.    The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

      b. In the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . ;

(5) Any pertinent policy statement—

      a. Issued by the Sentencing Commission . . . ; and

      b. That . . . is in effect on the date the defendant is sentenced[;]

(6) The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.' " *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). It is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is inappropriate. *See Shannon*, 518 F.3d at 496.

### B. The § 3553(a) Factors Weigh Against Compassionate Release

First, the Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Bureau of Prisons ("BOP") is in the best position to know which inmates are most susceptible to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released over 7,750 inmates that it identified as "suitable for home

confinement." *Coronavirus*, BOP (last visited Nov. 6, 2020).[2] Although not bound by any BOP determination, the Court gives BOP some deference in this area "considering [its] statutory role, and its extensive professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597.

With that in mind, the § 3553(a) factors weigh against a sentence modification here. Tolbert argues, without support, that he "is a good candidate for compassionate release" considering the "§ 3553(a) factors and that he is not a danger to the community." (Def.'s Mot. for Compassionate Release at 3). The record suggests otherwise. Tolbert pleaded guilty to a very serious drug offense just two years ago. Worse, not only did he facilitate the spread of deadly chemicals to the community, but he also encouraged addicts to commit theft and other crimes to fuel their addiction. Moreover, the fact that law-enforcement officers recovered various rounds of ammunition belies Tolbert's suggestion that he is not a danger to the community—his criminal behavior has placed the public in considerable risk. On balance, Tolbert's continued incarceration is necessary to adequately promote respect for the law, reflect the seriousness of the offense, and deter further criminal conduct from himself and others.

### III.   CONCLUSION

The Court **DENIES** Defendant Bobby J. Tolbert's Motion for Compassionate Release and **FINDS AS MOOT** his Motion for Status.

**IT IS SO ORDERED.**

**Dated: Tuesday, November 6, 2020**

**S/J. Phil Gilbert**
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**

---

[2] *Available at* https://www.bop.gov/coronavirus/.